```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| ANTON-ANTWAIN JONES, )<br>   )<br>        Plaintiff, )<br>   )<br>        v. )<br>   )<br>DAVID DAY; CONNOR BLAINE; ERIN )<br>RESSLER; SHARON D'ELETO; DR. )<br>HARPER; PAUL STOWITSKY; )<br>THOMAS JAMES, )<br>   )<br>        Defendants. ) | Civil Action No. 03-1585<br>JUDGE THOMAS M. HARDIMAN<br>MAGISTRATE JUDGE LENIHAN |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by remaining defendants Day, Blaine, D'Eleto, Stowitsky and James (Docket #43) be granted.

**II.  REPORT**

This is a prisoner civil rights case filed by Anton-Antwain Jones, a prisoner at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. The Court has already dismissed from this lawsuit defendant Dr. Harper, a physician at SCI Greene, and Erin Ressler, a physician's assistant (Docket #27)[1]. The remaining defendants, Day, Blaine, D'Eleto, Stowitsky and James, have moved for summary judgment (Docket #43) and have filed a brief and a statement of facts in support of that motion (Docket #s 44 and

---

[1] The order granting the motion to dismiss filed by defendants Harper and Ressler mistakenly directed that the case be closed as to all defendants. The case was reopened as to the moving defendants on December 29, 2005 (Docket #38).

45). Plaintiff has responded (Docket #47) and the motion is now ripe for disposition.

### a.  Plaintiff's claims.

Plaintiff alleges that he was attacked by another inmate, Jason Keiser, on November 2, 2001, while incarcerated at SCI Greene (Docket #3, ¶3). He was stabbed in the back of the head and was hospitalized in the prison for several days (Id.).

Following the attack, Plaintiff filed a "request slip" directed to defendant Day complaining that Keiser was a dangerous inmate (Id., ¶6). He followed this with a grievance which, he alleges, was unlawfully assigned to Defendant Day (id., ¶9). The grievance was denied by Day, and Plaintiff appealed to Grievance Coordinator James who allegedly threatened to place Plaintiff in the Restricted Housing Unit for his own protection (Id., ¶¶12-13). Day is also said to have threatened to place Plaintiff in the RHU in retaliation for complaints made by Plaintiff (Id., ¶20).

Plaintiff also alleges that his cell was searched in March, 2002, resulting in a misconduct being issued when contraband was found (Id., ¶¶21-22). The search and misconduct are said to have been in retaliation for Plaintiff filing a grievance against Defendant Day. Plaintiff also alleges that Day interfered with a December, 2002 request for a cell change, and instead had Plaintiff transferred to the RHU (Id., ¶¶23-29).

### b.  Factual record.

The parties agree that Plaintiff was attacked by inmate Keiser on November 2, 2001, and that Plaintiff was injured during the attack. Plaintiff's November 12, 2001 "Request to Staff Member" contains the following complaint:

> Mr. Day:
> Sir. I am writing to you to ask you was I attacked by a special needs patient, one who's [sic] under medical treatment? I should have been protected from this inmate, he could have killed me.

(Docket #43, Attachment A, page 2). Plaintiff followed this with a grievance on November 18, 2001, in which he asked if any investigation had been done into why he was attacked (Id., page 3). On December 12, 2001, Defendant Day responded to the grievance as follows:

> It appears you were targeted by another inmate, because of a past history between you and him at SCI Frackville. You deny any such history. At this time, this remains inconclusive. As for your protection, we will do everything that we can to protect you. However, we cannot predict unsolicited acts of violence without notification of reason to suspect provocation. You will be expected to report any problems that you might foresee. Administrative Custody is available if you feel that you need protection. Since you were not held responsible for the incident, you will not be charged any hospital bills.

(Id., page 5). Plaintiff appealed the denial of his grievance to the Superintendent on December 14, 2001, and specifically denied any prior history with inmate Keiser (Id., page 6). Plaintiff asked to be informed what medications, if any, Keiser was taking (Id.). The Superintendent responded on December 26, 2001, concluding that the grievance had been appropriately handled, and urging Plaintiff to seek protective custody if he felt threatened (Id., page 7).

Defendants have also provided a complete record of all institutional misconducts incurred by inmate Keiser. Keiser has been in Pennsylvania custody since 1997, and has incurred 23 misconducts during that time (Docket #43, Attachments C and D). Of these, only one was for assault, and this occurred at SCI Frackville in 1998 (Id., Attachment D). Keiser was transferred to SCI Greene in early 2001, and had no misconducts at SCI Greene prior to his assault on Plaintiff (Id.).

With respect to his retaliation claims, records indicate that Plaintiff was issued only one misconduct in March, 2002, and that it did not involve a cell search or any of the named defendants (Id., Attachment G). Instead, Plaintiff was found guilty of having attempted to smuggle contraband to another inmate (Id.). None of the named defendants was involved in the misconduct proceedings.

Likewise, the December, 2002 incident did not involve any of the named defendants. On December 10, 2002, Plaintiff reported that he could not get along with his cell mate and non-defendant Lt. Ogletree placed Plaintiff in self-protective custody (Id., Attachment H). Plaintiff was released from protective custody 2 days later when he reported that he had no problems (Id.).

**c.   Legal standard.**

Pursuant to Fed. Rule Civ. Proc. 56(c), summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case.").  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

   Plaintiff Jones seeks to assert liability against the defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>West v. Atkins</u>, 487 U.S.

42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

### d. Analysis.
#### 1. Failure to protect claim.

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures " 'to protect prisoners from violence at the hands of other prisoners.' " 117 F.3d 742, 746 (3d Cir.1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  Although, "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).  A plaintiff must prove more than that he had a fight with another inmate, see Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir.1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983 . Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).  To succeed, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3)

the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. <u>Farmer</u>, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [ on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." <u>Hamilton v. Leavy</u>, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." <u>Id</u>. In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious. The <u>Farmer</u> Court explained in hypothetical terms the type of circumstantial evidence sufficient for a finding of actual knowledge on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents evidence showing that **a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past ,'** and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

<u>Farmer</u>, 511 U.S. at 842-43 (emphasis added).

Thus, in order to survive defendants' summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants "'knowingly and unreasonably

-7-

disregarded an objectively intolerable risk of harm.'" <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 132 (3d Cir.2001).  It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." <u>Id</u>. at 138.

In this case, Jones simply has not provided any evidence that officials at SCI Greene had reason to suspect that Keiser was a danger to Jones prior to the time the assault occurred on November 2, 2001.  Defendants have provided inmate Keiser's record while incarcerated, which shows that he had no history of assaulting or threatening other inmates.  In fact, Keiser had a single incident of assaultive behavior which occurred more than 3 years prior to the November 2, 2001 assault.  Further, Plaintiff himself does not assert that he complained of threats or danger from Keiser, nor has he provided evidence that any named defendant was aware of any specific danger posed by Keiser to Plaintiff prior to the assault in this case.  Plaintiff himself has repeatedly denied that he had a prior history of difficulties with Keiser.

Plaintiff has, accordingly, not established that any named defendant "'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" <u>Beers-Capitol</u>, 256 F.3d at 132.  Rather, the record in this case conclusively establishes that Defendants had no reason to suspect that Keiser would attack Plaintiff, or, for that matter, any other inmate.  Far from establishing that threats of violence were "longstanding, pervasive, well-documented, or

expressly noted by prison officials in the past," Farmer, supra, Plaintiff here has failed to present any evidence that Defendants knew of any risk at all. Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

**2.   Retaliation claims.**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)(a plaintiff "need not show a separate, independent injury as an element of the case

... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

The first alleged "retaliation" in this case is a March, 2002 cell search and misconduct which Plaintiff claims was in retaliation for his having filed a grievance against Defendant Day. Defendants have provided evidence that the only misconduct issued to Plaintiff in March, 2002, was not the result of a cell search at all. Plaintiff had the opportunity to address this evidence in his response to the motion for summary judgment, but failed to do so. The Court will interpret Plaintiff's silence in this respect as an admission that the alleged cell search and misconduct did not occur as alleged. Defendants are entitled to summary judgment on this claim.

The other alleged incident of retaliation is said to have occurred in December, 2002. Plaintiff admits that he complained about his cell mate, but was upset when the response was to have him placed in protective custody instead of simply changing his cell assignment. Plaintiff asserts that this was in retaliation for his having filed a grievance against defendant Day. Records indicate, however, that Defendant Day was not the officer who sent Plaintiff to protective custody. Lt. Ogeltree, who is not named as a defendant, was the prison official who decided to place Plaintiff in protective custody (Docket #43, Attachment H), and he did so only after Plaintiff complained and sought assistance. Thus, Plaintiff fails to establish the third part of a prima facie case, since he cannot establish that any improper motivation was involved in the decision to remove him from his cell and place him in protective custody.

Finally, and in any event, Plaintiff was placed in protective custody for only two days in December, 2002, before being released back into the general population (Id.). As noted above, in order for action to be "adverse" for purposes of establishing a prima facie case of retaliation, it must be sufficient to "deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, supra. Here, there is no evidence that the two days out of his cell actually did deter plaintiff from filing grievances, nor is it the type of activity which may be expected to deter someone of ordinary firmness from asserting their rights. Plaintiff, accordingly, also fails to establish that he was

subjected to "adverse action" and Defendants are entitled to summary judgment.

### 3. Denial of Due Process.

Plaintiff asserts that he was denied due process when his grievance concerning the attack by inmate Keiser was assigned to Defendant Day, who had already responded to Plaintiff's earlier request. In this respect, Plaintiff appears to be arguing that it is a violation of Department of Corrections procedure to have the same individual handle the request and the grievance. Plaintiff has presented no evidence that the procedure followed was improper under DOC regulations and, even if he did prove that the grievance procedure was not followed in this case, he cannot state a claim. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa.1997), aff'd, 142 F.3d 430 (3d Cir.1998). Thus, the failure of a prison official to act favorably to an inmate grievance does not state a claim under §1983, nor does an asserted failure of prison officials to follow approved grievance procedures. See, e.g., Hoover v. Watson, 886 F.Supp. 410, 418-19 (D.Del. 1995); Wicks v. Shields, 191 F.Supp.2d 423, 428 (E.D.Pa. 2002). Defendants are entitled to summary judgment on this claim as well.

## CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the motion for summary judgment filed by remaining defendants (Docket #43) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                        LISA PUPO LENIHAN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: December 1, 2006

cc:  Anton-Antwain Jones, CS-5584
     SCI Greene
     175 Progress Drive
     Waynesburg, PA 15370

     Elizabeth M. Yanelli, Esquire
     Pietrogallo, Bosick & Gordon
     One Oxford Centre, 38th Floor
     Pittsburgh, PA 15219

     Scott A. Bradley, Esquire
     Senior Deputy Attorney General
     Office of the Attorney General
     6th Floor, Manor Complex

```
564 Forbes Avenue
Pittsburgh, PA 15219
```